ROBERT P. SMITH, Jr., Judge.
The City Commissioners of the City of Apalachicola and the City Clerk appeal from the circuit court’s final judgment on appellee’s petition for mandamus and for injunctive and declaratory relief, holding that appellee’s recall petition is effective to require a recall election of four commissioners, should they not resign. Section 100.-361(2), Florida Statutes (1977). One judge dissenting, this court previously affirmed the circuit court’s nonfinal order upholding the sufficiency of the charges of misfeasance and neglect of official duties. Tolliver v. Martina, 367 So.2d 655 (Fla. 1st DCA 1979); contrast Bent v. Ballantyne, 368 So.2d 351 (Fla.1979) [1]. We now consider the circuit court’s judgment that, after it was certified to the City Commission that the requisite percentage of qualified electors had signed the recall petition, the City Clerk had no power to purge a number of signatures at the signatories’ request, reducing their number below the required percentage of qualified electors. We affirm.
Section 100.361, Florida Statutes (1977), prescribes the right of electors of a municipality to remove “any member of the governing body” by an election called in response to a recall petition charging statutory ground for removal and bearing, in the case of a city the size of Apalachicola, the signatures of 250 or ten percent of the registered electors, whichever, is greater.
Such a petition was filed with the appellant City Clerk, as prescribed by Section 100.361(l)(d). On December 6, 1978, as required by (l)(d), the Clerk submitted the petition (i. e., the signed copies or “counterparts”) to the county supervisor of elections, whose duty it was to determine, within 30 days, “whether the petition contains the required valid signatures.” If the petition does not contain the required signatures, the Clerk so certifies to the governing body — here the City Commission — “and the matter shall be at an end.” Section 100.361(l)(e). But here the Supervisor of Elections, on December 6, 1978, certified to the Commission and to the Clerk that the requisite percentage of qualified electors had signed the petition and counterparts. The Clerk was absent from her office on December 6 and 7. Then, on Monday, December 11, the Clerk received 83 or 84 demands from signatories that their signatures be stricken from the petition, and she on December 11 notified the Commission that their signatures would be stricken, invalidating the petition for lack of the needed signatures.
Subsection 100.361(l)(g) affords the opportunity to all petition signatories to “de *236 mand in writing that his name be stricken from the petition.” But the same subsection concludes:
However, no signature may be stricken after the city auditor or clerk, or his equivalent, has certified the total of electors to the governing body.
The circuit court held:
It appears implicit that the reporting of the findings to the governing body is accomplished by the delivery of the certificate, or other documentation of the findings, to the office of the Clerk of the governing body. If the Clerk is not physically there, such delivery is nevertheless effective. It is only necessary to deliver the information to the site of the city records and the office of the custodian of such records. Procedures subsequent to this are also purely ministerial, with the findings of the Supervisor final and determinative of subsequent procedures to be followed. Implicit in this system is the final ascertainment if there are sufficient signatures, unwithdrawn before delivery to the Supervisor of Elections, to activate the holding of a recall election. Such deadline for withdrawal of a signature is the delivery to the Supervisor of the assembled “counterparts.” Thereafter there are the purely mechanical procedures to ascertain the exact number of valid signatures of qualified electors and the recording and publishing to the governing body of the number and percentage of qualified electors who have validly signed.
. Because of the foregoing interpretations of the statute, it is thus adjudged that upon the delivery of the findings and certificate of the findings of the Supervisor to the office of the City Clerk on December 7,1978, that there remained no authority or power in the Clerk to strike any further names, but that she was under a duty to serve on the persons sought to be recalled notice of the fact that the number of signatures on the “counterparts” of the Recall Petition and Defense amount to 15% of the qualified electors and to deliver to the City Commission the report and certificate of the County Supervisor as to the percentage of qualified voters who signed.
. The Court will regard that as done which should have been done, and as all the persons sought to be recalled are parties to this action, it will be deemed that this Judgment will serve as notice to them that the requisite 15% of the electorate has validly signed the petition, and they are each given the opportunity, within five days of filing this Judgment, to submit a written resignation in accordance with Section 100.361(2). In the event that no such resignation is filed with the City Clerk or if less than all shall submit such resignations, then the undersigned, as Chief Judge of the Second Judicial Circuit, will forthwith fix a day for holding a recall election for such persons as shall not have resigned.
By a lucid opinion, which we entirely approve though we do not set it out at length, the circuit court analyzed the detailed and interrelated provisions of Section 100.361 and found that the actions of the Clerk and Supervisor of Elections on December 6, 1978, put the recall petition beyond dissolution on December 11 through the Clerk’s striking of signatures. The circuit court was correct and its judgment is
AFFIRMED. We dispense with any petition for rehearing. Any stay effected by Fla.R.App.P. 9.310 is vacated effective in five days, and the clerk will then issue our mandate.
ERVIN, J., concurs.
MILLS, Acting C. J., specially concurs.

. Bent held that charges of malfeasance must be paid in specific terms showing a violation of law. The case before us involves no charges of malfeasance.